1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

7
8
9

RODNEY BUTLER,

         Petitioner,

    v.

AUDREY GILL, Warden,

         Respondent.

Case No. 1:13-cv-02052-SKO  HC

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

10
11
12
13
14
15
16
17
18
19
20

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  He contends that the Bureau of Prisons ("BOP") (1) violated his right to due process by failing to give him notice of new disciplinary charges at least 24 hours before his disciplinary hearing, and (2) denied him an impartial hearing because the Disciplinary Hearing Officer ("DHO") impermissibly contacted Petitioner's witnesses prior to the disciplinary hearing.

21

## I.    Background

22
23
24
25
26

On July 19, 2007, the U.S. District Court for the Eastern District of California sentenced Petitioner to 240 months' imprisonment after he pled guilty to conspiracy to possess cocaine with intent to distribute cocaine (21 U.S.C. § 846).  At the time of the alleged disciplinary infractions, Petitioner, who remains in the custody of the BOP, was incarcerated at the Federal Correctional

///

27
28

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

Institution, Mendota, California.  His projected release date is January 31, 2022, with good conduct time.

According to Incident Report No. 2469971, filed July 19, 2013, and prepared by Counselor G. Pullings:

> Correctional staff became aware of the infractions on July 19, 2013 while investigating a BP-8 from inmate Butler regarding his mail.  On July 8, 2013, Butler informed me that he had sent some legal mail out certified and that it was not being delivered from the mail room to the Mendota post office in a timely manner and that he emailed his family when the letter was sent.  I became aware that on June 26, 2013 inmate Butler, Rodney 91084-012 circumvented the mail procedures by violating PS 1315.07 by working on legal material for his son.  In the inmates PSI it lists Rodney Butler Jr. as his only son, who was 18 in 2007.  On the inmate contacts it lists David Dudley and Larry Fitzgerald as his attorneys. On June 25, 2013 Butler stated in an E-mail to Karen Starks (babakyds@yahoo.com) Karen I'm typing up an Affidavit for our son, he will need to get it notarized when he signs it.  Then he will need to give it to the judge himself to be out in the record.  That should take care of his problem.  I should have it finished in a day or two."  Then on June 26, 2013 inmate Butler sent out another [e]-mail to Karen Starks (babakyds@yahoo.com) Karen I sent that affidavit to mom's this morning so she should get it Saturday or Monday.  I sent it Certified Mail.  Make sure U let Ashley know what is going on with her brother. I emailed her but she doesn't check her email with me like she should.  Make sure that our son gets that affidavit notarized when he signs it.  I put a letter of instructions in there with it.  All he has to do is trust me and he can come out of this.  If he has any questions let me know right away."  Inmate Butler is circumventing the mail at FCI Mendota through Karen Starks.  Inmate Butler has 4 previous code 296 sanctions beginning May 21, 2012.

Doc. 11-1 at 33.

The incident report specified two prohibited acts: use of the mail for abuses other than criminal activity (28 C.F.R. § 541.3, Code 296) and lying or providing a false statement (28 C.F.R. § 541.3, Code 313).

At the Unit Committee hearing on July 23, 2013, Petitioner declined to comment on the incident.  The committee referred the matter to a DHO.  It recommended that if the DHO determined that Petitioner had committed the prohibited acts, he or she should impose the greatest severity of sanctions.

///

2

DHO James Dern conducted the disciplinary hearing on August 1, 2013.  Petitioner was assisted by a staff representative, Case Manager P. Starks.[2]  Petitioner requested two witnesses: Correctional Services Officer E. Avila to testify that he sent the disputed mail as certified mail, not legal mail, and Special Investigative Support (SIS) Technician S. Rositas to testify that he had examined the disputed mail and found nothing illegally sent.  Neither witness was immediately available: DHO Dern did not call them since the matters to which they were to testify were not disputed.  Officer Avila provided a statement and the log listing that the disputed mail was sent via certified mail.  SIS Technician Rositas testified by telephone that he did not personally search the disputed item of mail.  Petitioner stated, "My son's mother sent me an email stating my son had legal issues and I sent him a copy of my motion to use in court.  I thought he was at home."  Doc. 11-1 at 8.  Petitioner presented no documentary evidence.

The DHO concluded that Petitioner had committed the prohibited act of using the mail for abuses other that criminal activity, in violation of code 296.

> As a basis for this decision, I considered the following: the statement of Counselor G. Pullings; records showing that inmate Butler's son, Rodney Butler, Jr., was incarcerated at Kentucky's Murray County Jail on June 20, 2013 ten days before inmate Butler sent his son certified mail; inmate Butler's four previously sanctioned code 296 violations with the last one involving the use of legal mail to send his son's mother a letter; emails sent from inmate Butler to his son's mother; mail log records; inmate Butler's "affidavit or motion," which was designed to present his son as a Sovereign Citizen that does not recognize U.S. laws in the same mold as inmate Butler; and the statements of inmate Butler at the DHO hearing.

Doc. 11-1 at 8.[3]

The DHO concluded that Petitioner violated Code 296, but he expunged the alleged violation of Code 313, lying or providing a false statement.  He found, "A

---

[2] Petitioner first requested the assistance of staff member K. Trotter.  Trotter, who was on annual leave, was not available.
[3] The statement of Counselor G. Pullings is included in the record at Doc. 11-1 at 42-43.  It is substantially consistent with the incident report previously quoted in this order.
Petitioner was previously sanctioned for violations of Code 296 which consisted of multiple attempted filings of UCC statements to invalidate Petitioner's judgment and conviction and to coerce court personnel to release him.
A copy of the five-page affidavit that Petitioner prepared for his son and Petitioner's directions to his son for presenting it to the Kentucky court are included in the record at Doc. 11-1 at 53-58.

reasonable person would conclude that inmate Butler attempted to send his son mail via a third party in order to circumvent FCI Mendota's mail procedures as he is not currently authorized to correspond with this inmate." Doc. 11-1 at 30. The DHO explained his decision:

> I found inmate Butler guilty of violating Code 296 because I was not convinced by inmate Butler's statement that he thought his son was at home when his son's mother sent him an email stating his son had legal issues. Inmate Butler could not tell me why he only communicated with his son's mother if he thought his son was in legal trouble. Nor could inmate Butler tell me why he never tried to contact his son at home by e-mail or telephone. Inmate Butler provided me no explanation for addressing a legal affidavit intended for his son to "Moms" give his son was allegedly living at home with his mother.

> Doc. 11-1 at 10. *See also* Doc. 11-1 at 29-30.

The DHO imposed the following sanctions: forfeiture of 27 days of good conduct time; loss of 180 days of telephone and visiting; and loss of one year of e-mail access.

After exhausting his administrative appeals, Petitioner filed the pending petition for writ of habeas corpus on December 17, 2013.   Respondent answered on March 3, 2014; Petitioner filed a reply brief on March 17, 2014.  The parties do not dispute venue, service, exhaustion, or subject matter jurisdiction.

## II.    Alleged Violation of Due Process Rights

Procedural due process of law requires inmates subject to the loss of conduct credits to be given advance written notice of the claimed violation, a right to call witnesses and present documentary evidence where it would not be unduly hazardous to institutional safety or correctional goals, and a written statement of the finder of fact setting forth the evidence relied upon and the reasons for the disciplinary action taken.  *Wolff v. McDonnell*, 418 U.S. 539, 563-64 (1974).  If the inmate is illiterate, or if the issue is so complex that it is unlikely that the inmate will be able to collect and present the evidence necessary for adequate comprehension of the case, the

///

4

inmate should be given access to help from staff or a sufficiently competent inmate designated by staff.  Confrontation, cross-examination, and counsel are not required.  *Id.* at 568-70.

Petitioner contends that his right to advance written notice of the claimed violation was violated when he was not given notice of the amendment of the disciplinary charge from Code 313, Lying or Providing a False Statement, to Code 296, Use of the Mail for Abuses other than Criminal Activity.  His claim is without factual support in the record.

As detailed in the background statement, the charges against Petitioner were never amended.  Incident Report No. 2469971, filed July 19, 2013, and addressed at the Unit Committee Meeting on July 23, 2013, alleged two violations: Code 313, Lying or Providing a False Statement, and Code 296, Use of the Mail for Abuses other than Criminal Activity.  These were the same charges that the DHO addressed on August 1, 2013.  The DHO concluded that Petitioner violated code 296 but not code 313.

Acquittal on one of the two grounds alleged as disciplinary charges is not tantamount to an amendment of the charges.  In fact, as Respondent points out, the DHO's finding that Petitioner committed only one of the two charges was a positive outcome for Petitioner.

Petitioner's claim that he was not provided with written notice of the amendment of the charges against him is without merit.

**III.     The Effect of the DHO's Investigation on his Impartiality**

Petitioner contends that because the DHO investigated the case before the hearing, Petitioner was denied an impartial decision maker.  Respondent maintains that the DHO satisfied the requirement of an impartial hearing officer.  The Court agrees with Respondent.

The right to be heard by an impartial disciplinary committee is "[b]asic to an accused prisoner's constitutional guarantee of an accurate and fair fact finding determination prior to the imposition of sanctions." *Clutchette v. Procunier*, 497 F.2d 809, 820 (9th Cir. 1974), *modified*, 510

F.2d 613, *rev'd on other grounds sub nom.*, *Baxter v. Palmigiano*, 425 U.S. 308 (1976).  Although most prison officials are likely to know of significant disciplinary infractions within the prison, no disciplinary hearing officer should also participate in the action as an investigating or reviewing officer, or as a witness with personal knowledge of the facts of the accused inmate's participation in the alleged infraction.  *Id.*  Generally, a prison official who is not directly involved or personally interested in the outcome of the disciplinary hearing will satisfy the due process requirement of a neutral and detached hearing officer.  *Id.*  "[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has any other form of personal involvement in the case."  *Wolff*, 418 U.S. at 592 (Marshall, J., concurring).  Consistent with these principles, applicable regulations provide that "[t]he DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise involved in the incident."  28 C.F.R. § 541.8(b).

Petitioner contends that DHO Dern was not impartial because he investigated the incident by contacting Petitioner's witnesses Wilders, Rositas, and Avila prior to the hearing.  The facts regarding the DHO's contacting those individuals indicate that his activities were not consistent with an investigation of the incident, which had already been fully detailed in the incident report.  Instead, his actions addressed the regulatory requirement that the DHO determine whether witnesses will appear at the hearing based on their being reasonably available, possessing information directly relevant to the pending charges, unlikely to jeopardize institutional security, and necessary to present evidence that is not repetitive of the incident report or other investigation materials.  28 C.F.R. § 541.8(f).  As DHO Dern did that, Petitioner was not denied an impartial hearing officer.

///

///

6

1

IV.   **Certificate of Appealability**

2      A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

3  court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v. Cockrell*,

4  537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate

5  of appealability is 28 U.S.C. § 2253, which provides:

6
>     (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
7 >     district judge, the final order shall be subject to review, on appeal, by the court of
>     appeals for the circuit in which the proceeding is held.
8
>     (b)  There shall be no right of appeal from a final order in a proceeding to test the
9 >     validity of a warrant to remove to another district or place for commitment or trial
>     a person charged with a criminal offense against the United States, or to test the
10 >    validity of such person's detention pending removal proceedings.
11
>     (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an
12 >           appeal may not be taken to the court of appeals from—
13
>           (A)  the final order in a habeas corpus proceeding in which the detention
14 >           complained of arises out of process issued by a State court; or
15
>           (B)  the final order in a proceeding under section 2255.
16
>     (2)  A certificate of appealability may issue under paragraph (1) only if the
17 >    applicant has made a substantial showing of the denial of a constitutional
>    right.
18
>     (3)  The certificate of appealability under paragraph (1) shall indicate which
19 >    specific issues or issues satisfy the showing required by paragraph (2).

20     If a court denies a petitioner's petition, the court may only issue a certificate of appealability

21  "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

22  that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

23  further."  *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Although the

24  petitioner is not required to prove the merits of his case, he must demonstrate "something more than

25  the absence of frivolity or the existence of mere good faith on his . . . part."  *Miller-El*, 537 U.S. at

26  338.

27

28

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court declines to issue a certificate of appealability.

**IV.**     **Conclusion and Order**

The Court hereby ORDERS that:

1.      The petition for writ of habeas corpus is DENIED;

2.      The Clerk of Court is DIRECTED to enter judgment for Respondent; and

3.      The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

Dated:   **June 30, 2015**                              **/s/ Sheila K. Oberto**
                                                                    UNITED STATES MAGISTRATE JUDGE